UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
UNITED STATES OF AMERICA,       )
                                )
          v.                    )     CRIMINAL ACTION
                                )     NO. 11-10221-WGY
LUCIA MARIA BOLIERO,            )
                                )
          Defendant.            )
                                )
```

## MEMORANDUM & ORDER

YOUNG, D.J.                                    February 13, 2013

## I. **INTRODUCTION**

The defendant, Lucia Maria Bolieiro[1] ("Ms. Bolieiro"), is
charged with violating 8 U.S.C. section 1326(a) and (b)(2),
which makes the illegal reentry of a removed alien a criminal
offense. The indictment charges Bolieiro with being found in
the United States after having been excluded, deported, and
removed without the express consent of the Attorney General or
the Secretary of the Department of Homeland Security to reapply
for admission to the United States. Indictment 1, ECF No. 1.

---

[1] The indictment and docket for this case spell the
defendant's surname as "Boliero." See Indictment 1, ECF No. 1.
After reviewing documents in the case, including immigration
records and affidavits by the defendant and her children, it is
clear to this Court that the proper spelling of her surname is
"Bolieiro." The Court will use this spelling in its opinion
while maintaining "Boliero" in the caption to reflect the
spelling used in the indictment.

1

Since that indictment, the New Hampshire Superior Court has vacated the conviction which precipitated the order of deportation against Ms. Bolieiro. Def.'s Status Report, Attach. 1, Agreement, ECF No. 11-1. She has also raised due process concerns regarding the entry of the deportation order. See Def.'s Mot. Dismiss & Mem. Law ("Def.'s Mem."), ECF No. 21. Ms. Bolieiro has filed a motion to dismiss challenging the validity of the deportation order collaterally. Def.'s Mem. To succeed on her motion, she must show (1) that she has exhausted all administrative remedies, (2) that she was improperly deprived of the opportunity for judicial review, and (3) that entry of her deportation order was fundamentally unfair. 8 U.S.C. § 1326(d).

## A.    Personal Background

Most of the relevant facts in this case are not in dispute.

Lucia Maria Bolieiro was born in Brazil on October 24, 1965. Gov't's Opp'n Def.'s Mot. Dismiss ("Gov't Opp'n") 1, ECF No. 37. She emigrated to the United States from Brazil with her parents on September 17, 1972. Def.'s Status Report ¶ 1, ECF No. 11. At that time, she was admitted as a lawful permanent resident. Id. She remained in the United States until her deportation to Brazil on June 3, 1999. Def.'s Mem. 2; see Gov't Opp'n 1. At that time, she was the sole caretaker of an eleven-year-old child and had been employed full-time for many years. Resp't's Mot. Reopen Deportation Proceedings ("1999 Mot.

Reopen") ¶ 6, ECF No. 36. While in the United States, Ms. Bolieiro had two children, now approximately twenty-three and thirty years old. See Def.'s Status Report ¶ 2.

## B. Procedural Background

In 1990, "Ms. Bolieiro was charged with selling $100 worth of cocaine to an undercover" police officer. Def.'s Status Report, Attach. 1, Mot. Withdraw Guilty Plea & Vacate Conviction 1, ECF No. 11-1. She pled guilty on March 6, 1991. Id. The defendant was served in hand with an Order to Show Cause ("OSC") on April 9, 1992. Gov't Opp'n 2. The OSC indicated that Ms. Bolieiro was deportable based on two grounds: (1) as an alien having violated the Controlled Substances Act and (2) as an aggravated felon. Id. Both grounds of deportability stem from her 1991 guilty plea.

Ms. Bolieiro appeared, without counsel, before Immigration Judge Leonard Shapiro (the "hearing officer") on June 2, 1992, and July 8, 1992. Gov't Opp'n, Attach. 1, Proceedings Tr. (June 2, 1992), ECF No. 37-1; Gov't Opp'n, Attach. 1, Proceedings Tr. (July 8, 1992), ECF No. 37-1. The hearing officer first found that on the basis of the conviction, Ms. Bolieiro was deportable. Proceedings Tr. (July 8, 1992) 9. He advised Ms. Bolieiro, however, that she was eligible for a waiver of deportation under Immigration and Nationality Act ("INA") section 212(c) as a long-term permanent resident. Id. The

3

hearing officer set August 10, 1992, as the deadline for filing the requisite paperwork and paying the requisite fees. Id. at 10-11. He also warned Ms. Bolieiro that if she did not file the application by August 10, 1992, then he would consider the application abandoned and order her deported. Id. at 12. Ms. Bolieiro did not file an application for INA section 212(c) relief. Gov't Opp'n 4. On September 30, 1992, the hearing officer ordered her deported. Order Show Cause, Notice Hr'g, & Warrant Arrest Alien, Ex. 3, Decision Immigration Judge ("1992 Decision Immigration Judge"), ECF No. 30-2. She never appealed the order, Gov't Opp'n 4, and has claimed that she was unaware of "her status of deportation" until 1994, when she was detained by immigration officials, 1999 Mot. Reopen ¶ 3.

According to Ms. Bolieiro, she was released by immigration officials "pursuant to an agreement . . . that she provide cooperation," id., and she became a confidential informant ("CI"), CI number XBOS1998011, Def.'s Mem. 2. She remained a CI from 1995 until 1999, when she was terminated. Id. Despite her detention in 1994, Ms. Bolieiro claims to have been unaware of the 1992 deportation order. See 1999 Mot. Reopen ¶ 3; Def.'s Mem. 2. Based on representations of immigration officials, she believed instead "that she was in compliance with them and that her status in the [c]ountry was not in jeapordy [sic]." 1999 Mot. Reopen ¶ 3.

4

Upon her termination as a CI, she was taken back into custody by immigration officials. See Gov't Opp'n 4; Def.'s Mem. 2. Ms. Bolieiro claims that it was at this time that she learned of the 1992 deportation order and began to challenge it. See Def.'s Mem. 2; Gov't Opp'n 4. Through counsel, Ms. Bolieiro asked for a stay of her deportation and filed a motion to reopen her immigration proceedings. Gov't Opp'n 4. The same hearing officer denied the motion to reopen on May 7, 1999. Order Show Cause, Notice Hr'g, & Warrant Arrest Alien, Ex. 6, Decision Immigration Judge ("1999 Decision Immigration Judge"), ECF No. 30-5.

In that decision, the hearing officer stated that the motion to reopen was denied because the motion was untimely, because it failed to comply with the regulatory requirements for such filings like the inclusion of evidence showing the payment of the proper fee and of a completed section 212(c) application, and as a matter of discretion.[2] Id. at 2-3.

_____

[2] It is not entirely clear what the hearing officer meant by stating that he "will deny the . . . motion as a matter of discretion." Id. at 3. After all, he followed the statement by noting that the alien was warned that a failure to file her application for relief would result in deportation, but then commented that she "has offered no evidence as to why she failed to file her application for relief." Id. These statements suggest that the hearing officer evaluated the lack of evidence and concluded that she was not eligible for reopening rather than that he evaluated her actual case to determine whether she was eligible for INA section 212(c) relief. This Court takes these statements as a finding by the hearing officer that the

5

Ms. Bolieiro was removed from the United States on June 3, 1999. Gov't Opp'n 4. At some point, Ms. Bolieiro returned to the United States and entered without inspection. See id.; Def.'s Mem. 3. Ms. Bolieiro was arrested by immigration officials on May 14, 2011. Gov't Opp'n 4. She was indicted in this case for unlawful reentry on June 8, 2011. Id.

The New Hampshire Superior Court vacated Ms. Bolieiro's 1991 conviction on November 7, 2011. Id. at 5; Def.'s Status Report ¶ 7. The Assistant County Attorney recommended vacating the conviction and noted that the state would nol pros the indictment. Agreement. The conviction was constitutionally infirm because it violated the principle recently announced by the Supreme Court in Padilla v. Kentucky, 130 S. Ct. 1473 (2010), that "counsel must inform her client whether his plea carries a risk of deportation," id. at 1486. Gov't Opp'n 5; Def.'s Status Report ¶ 7; Agreement.

---

motion lacked the required attachments such as proof of filing fee payment, the INA section 212(c) application, and an explanation as to why she failed originally to file that application.

This Court further notes that rather than file an explanation as to why she failed to complete the INA section 212(c) application, or at least an explanation as to why she failed to make a motion to reopen earlier, Ms. Bolieiro's counsel "allege[d] that she received ineffective assistance of counsel." Id. This final allegation was unsupported by a required affidavit, failed to meet other requirements of ineffective assistance claims, and is particularly puzzling as Ms. Bolieiro was not previously represented by counsel. See id.

With the dismissal of the underlying conviction in hand, Ms. Bolieiro moved to reopen the 1992 deportation order on December 28, 2011 ("2011 motion to reopen"). Def.'s Status Report ¶ 8. Further, on January 5, 2012, she also submitted additional materials claiming eligibility for relief under the Violence Against Women and Department of Justice Reauthorization Act of 2005 ("VAWA"). Order Show Cause, Notice Hr'g, & Warrant Arrest Alien, Ex. 7, Resp't's Mot. Reopen ("2012 IJ Opinion") 2, ECF No. 30-6.

The same hearing officer denied the 2011 motion to reopen on January 31, 2012. Id. at 4. He also denied a motion to reconsider this denial on March 7, 2012. Order Show Cause, Notice Hr'g, & Warrant Arrest Alien, Ex. 8, Lucia Maria Boliero Deportation Proceedings Appeal ("BIA Decision") 1, ECF No. 30-7. In rejecting the 2011 motion to reopen, the hearing officer found that he did not have jurisdiction to consider the motion. 2012 IJ Opinion 3. Much of the reasoning for this decision was based on the fact that Ms. Bolieiro "did not request [the] vacatur until October 5, 2011, almost two decades after her removal had been effectuated."[3] Id. The hearing officer blamed Ms. Bolieiro for "fail[ing] to institute proceedings to vacate

---

[3] Here, the hearing officer simply gets it wrong – writing that the removal order was executed in 1994. Id. It was not executed until 1999. Thus, vacatur was actually requested about twelve years after removal.

7

her conviction prior to her removal, and instead 'sle[eping] on her rights until after deportation has been accomplished.'" Id. (quoting[4] Matter of C-, 8 I. & N. Dec. 611, 614 (BIA 1960)).[5] As a result, he found that the enforcement of a deportation order based on a now-vacated conviction was not a "gross miscarriage of justice" because the order was proper under the law at the time of execution. See id. Furthermore, the hearing officer found that "exceptional circumstances" did not exist, id., despite the showing that Ms. Bolieiro lost her lawful permanent resident status and was ordered deported due to a conviction that was later vacated as constitutionally infirm.

Ms. Bolieiro appealed from the denials of the motion to reopen and the motion for reconsideration to the Board of Immigration Appeals ("BIA"). Def.'s Status Report ("Second

---

[4] The hearing officer non-materially misquotes Matter of C-.

[5] This line of reasoning confuses this Court as Padilla was not decided until 2010. Ms. Bolieiro filed her motion to vacate the conviction the following year, in 2011. Cf. United States v. Morgan, 222 F. 2d 673, 675 (2d Cir. 1955) (noting that because it only became clear recently that relief was available, defendant "did not 'sleep on his rights.' At any rate, his somnolence cannot count against him, as he evidenced marked diligence from the moment when he could reasonably have been expected to awake."). The hearing officer may have wanted Ms. Bolieiro to institute proceedings to vacate her conviction spontaneously - before she was detained by immigration authorities and charged with illegal reentry - but given the likelihood of detention, a criminal conviction, and deportation, it is hardly surprising that Ms. Bolieiro did not venture down this risky path to seek redress until her arrest forced her to do so.

8

Status Report") ¶ 6, ECF No. 12. On May 29, 2012, the BIA dismissed this appeal. BIA Decision. The BIA agreed with the hearing officer, writing:

An alien has received due process where, at the time of her departure, she had been convicted of a crime triggering the relevant deportation provisions, her removal proceeding came to a lawful conclusion before her conviction was vacated, and, with benefit of appropriate notice, she received a hearing before an Immigration Judge and an opportunity for appeal.

Id. at 3. On June 27, 2012, Ms. Bolieiro appealed this denial to the First Circuit Court of Appeals where it is now pending. United States v. Boliero, (BIA 2012), appeal docketed, No. 12-1807 (1st Cir. June 27, 2012); Second Status Report ¶ 7.

Finally, Ms. Bolieiro has been found to be prima facie eligible for relief under VAWA. Second Status Report, Attach. 1, I-797 Notice of Action, ECF No. 12-1.

## II. **ANALYSIS**

Ms. Bolieiro is charged with illegally reentering the United States without the consent of the Attorney General. An individual may be guilty of illegal reentry if (1) the defendant is an alien (2) who was previously deported and (3) entered the United States (4) without the requisite permission. See 8 U.S.C. § 1326(a); United States v. Contreras Palacios, 492 F.3d 39, 42 (1st Cir. 2007). One circuit court has held that "a valid order of removal is a condition precedent to the establishment of guilt under § 1326, and a defendant may

9

collaterally attack the removal order underlying the offense."
United States v. Acosta-Flores, 484 F. App'x 747, 749 (4th Cir.
2012) (per curiam). At oral argument regarding this motion, the
Special Assistant U.S. Attorney representing the government
agreed that a valid order is a required element. See Electronic
Clerk's Notes, January 15, 2013, ECF No. 38.

In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the
Supreme Court recalled the established principle that "where the
defects in an administrative proceeding foreclose judicial
review of that proceeding, an alternative means of obtaining
judicial review must be made available before the administrative
order may be used to establish conclusively an element of a
criminal offense." Id. at 838 (citing Estep v. United States,
327 U.S. 114, 121-22 (1946); Yakus v. United States, 321 U.S.
414, 444 (1944)). The Court ruled that because a deportation
order is an element of illegal reentry, the criminal defendant
charged with illegal reentry must be afforded an opportunity to
have judicial review of the deportation order. See id. "[T]he
unavailability of effective judicial review of the
administrative determination" is the distinguishing
characteristic that requires allowing a collateral attack on the
administrative order in a criminal prosecution where the order
is an element. Id. at 841.

After the Mendoza-Lopez decision, Congress amended 8 U.S.C. section 1326 in order to codify the constitutional requirement that the Supreme Court recognized. Under the congressional formulation, to collaterally attack a deportation order, an alien charged with illegal reentry must show that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Ms. Bolieiro must satisfy all three elements to attack her 1992 deportation order successfully. See United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006).

Moreover, the First Circuit has construed section 1326(d)(3) as requiring a showing of prejudice. Under the First Circuit's construction of section 1326(d)(3), an alien "must show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997). Therefore, under section 1326(d)(3), the entry of a fundamentally unfair order occurs where there is both a fundamental procedural error and prejudice as a result. See, e.g., United States v. Charleswell, 456 F.3d 347, 358 (3d Cir. 2006) ("Thus, under § 1326(d)(3), in order for

a proceeding to be 'fundamentally unfair,' the alien must establish both that some fundamental error occurred and that as a result of that fundamental error he suffered prejudice."); United States v. Perez, 330 F.3d 97, 103 (2d Cir. 2003) ("To show fundamental unfairness, a defendant must show both a fundamental procedural error and prejudice resulting from that error."(quoting United States v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002)) (internal quotation marks omitted)); United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995) ("[T]he establishment of a fundamentally unfair hearing in violation of due process requires a showing both of a fundamental procedural error and that the error caused prejudice . . . ." (footnote omitted)); see also Luna, 436 F.3d at 319 (noting that under section 1326(d)(3) "courts uniformly require a showing of procedural error and prejudice").

## A. Exhaustion of Administrative Remedies

The first prong of section 1326(d) requires that the alien demonstrate that she has exhausted all administrative remedies. 8 U.S.C. § 1326(d)(1). Statutory exhaustion requirements are jurisdictional and, absent statutory specification, are subject to very few exceptions. See Sousa v. INS, 226 F.3d 28, 31-32 (1st Cir. 2000).

There must, however, be some exception because even though there was no exhaustion of administrative remedies in Mendoza-

12

Lopez, see 481 U.S. at 830, the Mendoza-Lopez Court held that
collateral review was constitutionally required, id. at 837-39.
As section 1326(d) was meant to codify the constitutional
principle trumpeted in Mendoza-Lopez, the exception to
exhaustion of administrative remedies applied in that case must
be an exception to the statutory framework as well. See United
States v. Sosa, 387 F.3d 131, 137 (2d Cir. 2004). Based on this
reasoning, the Second Circuit has concluded that a "failure to
exhaust administrative remedies bars collateral review of a
deportation proceeding under Section 1326(d)(1) . . . only where
an alien's waiver of administrative review was knowing and
intelligent." Id. at 136.

The First Circuit has noted that "[i]t is clear that appeal
to the Board of Immigration Appeals (BIA) is . . . an
administrative remedy, and that failure to take such an appeal
constitutes a failure of exhaustion." United States v. DeLeon,
444 F.3d 41, 50 (1st Cir. 2006). The First Circuit noted
exceptions to the exhaustion requirement adopted by the Second,
Sixth, and Ninth Circuits but did not take a position on whether
to recognize them. See id. at 50-51.[6] Therefore, this Court is
free to accept or reject these exceptions.

---

[6] In sketching out an appellant's argument, the First
Circuit quoted the Ninth Circuit's conclusion that this
requirement "cannot bar collateral review of a deportation
proceeding when the waiver of [the] right to an administrative

13

This Court holds that to comply with the constitutional principle enunciated in Mendoza-Lopez, exceptions to the section 1326(d)(1) exhaustion requirement must exist. Particularly, failure to appeal to the BIA must be excused where the failure occurred as a result of a due process violation and, thus, was not a knowing and intelligent waiver.

Ms. Bolieiro claims two due process violations. First, she claims that she never received notice of her right to appeal. Def.'s Mem. 4. She learned of the 1992 deportation order only when authorities took steps to remove her. Id. at 2. At this point, she retained an attorney to fight the deportation order. Id. This attorney's ineffective assistance in her motion to reopen constitutes the second due process violation. Id. at 6.

The government argues that ineffective assistance at the motion to reopen stage is too late. See Gov't Opp'n 7-10. The government submits that Pena-Muriel v. Gonzales, 489 F.3d 438 (1st Cir. 2007), should be the guiding case. Gov't Opp'n at 8-10. This Court disagrees. While Pena-Muriel is factually similar, it diverges from this case in at least one significant particular. The motion to reopen filed in that case was filed after the alien had voluntarily departed from the country.

appeal did not comport with due process." Id. at 50 (alteration in original) (quoting United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001)). It also explicitly mentioned the Sosa exception recognized by the Second Circuit. Id.

Pena-Muriel, 489 F.3d at 443. In this case, Ms. Bolieiro filed the motion to reopen before she was removed.[7]

Also distinguishing Pena-Muriel from the case at bar is its procedural posture. In Pena-Muriel, the First Circuit denied the alien's petition for review[8] of a hearing officer's decision and the BIA's denial of a motion to reopen, not a motion to dismiss a criminal indictment. Id. at 440.

This Court adopts the Second Circuit's decision in United States v. Perez, 330 F.3d 97, because it is more instructive on what satisfies the section 1326(d)(1) exhaustion of administrative remedies requirement.[9] In that case, rather than appealing the deportation order to the BIA, the alien appealed the denial of his motion to reopen. Id. at 100-01. The Second Circuit suggested that an appeal of a denial of a motion to reopen may itself satisfy the exhaustion requirement in all

---

[7] This is a significant difference as Pena-Muriel voluntarily departed while Ms. Bolieiro claims she was unaware of the deportation order until immigration officials began the process of removal. She attempted to challenge the removal process as soon as she became aware of it.

[8] The case originally involved a petition for a writ of habeas corpus before a district court but was transferred to the First Circuit as a petition for review after the enactment of the REAL ID Act of 2005. Id. at 440. See Enwonwu v. Chertoff, 376 F. Supp. 2d 42, 78-85 (D. Mass. 2005).

[9] Perez is nearly identical to the present case in its procedural posture. In Perez, the Second Circuit reviewed a district judge's dismissal of an illegal reentry indictment under section 1326(d). 330 F.3d at 99.

15

cases[10] but did not reach this issue. Id. Instead, the Second

Circuit held that an appeal of a motion to reopen satisfies the

exhaustion requirement for due process claims. Id.

---

[10] "The statutory and regulatory framework establishing
administrative deportation proceedings provide[s] two different
avenues to challenge the validity of a deportation order": a
time-limited appeal to the BIA and "a motion to reconsider or
reopen proceedings." Gov't Opp'n 7. The government argues that
the point at which it is "time to ask whether an alien has
exhausted her administrative remedies is the point at which the
alien has been afforded due process of law." Id. at 7-8. The
government then uses Pena-Muriel to argue that due process ends
with the original failure to appeal and does not extend to a
motion to reopen. Id. at 8-9.

The factual distinction between Pena-Muriel and the current
case makes all the difference on this point. Ms. Bolieiro's
1999 motion to reopen came before her removal whereas the alien
in Pena-Muriel moved to reopen for the first time after he
voluntarily departed the country. Allowing the filing of a
motion to reopen before an alien is removed must be a part of
the process due in deportation proceedings. Cf. Perez, 330 F.3d
at 101 (noting that "the BIA does not have jurisdiction to
adjudicate constitutional issues" and, thus, the only remedy it
can provide is to reopen proceedings). Similarly, the ruling in
United States v. Cerna, No. 04 Cr. 765, 2008 WL 216632 (S.D.N.Y.
Jan. 23, 2008), relied on the defendant's failure to file a
motion to reopen in the year between the order of deportation
and removal as a factor in concluding that the alien had
knowingly and intelligently waived his administrative remedies.
See id. at *3. While United States v. Cerna, 603 F.3d 32 (2d
Cir. 2010), vacated the district court's denial of a motion to
dismiss a criminal indictment, the reviewing court's opinion did
not reject a motion to reopen as one of the administrative
remedies that the alien could have and should have exhausted.
Id. at 38. This set of rulings suggests that a motion to reopen
is part of the process due an alien in immigration proceedings
at least until the alien is removed. While the period of time
that passed between deportation being ordered and the filing of
a potential motion to reopen in Cerna was only one year, id. at
37, as compared to the seven years in the case at bar, the
longer time period must be excused as Ms. Bolieiro was a CI for
immigration officials and claims not to have known of or been
informed of the deportation order.

16

That reasoning is persuasive to this Court. In cases where the alien failed to appeal a deportation order because of a violation of due process, preventing a collateral attack on this deportation order when it is an element of a criminal offense would constitute a further denial of due process.

In the current case, Ms. Bolieiro claims that, despite her work as a CI, she did not receive actual notice of the final order of deportation and that the immigration court failed to advise her of her right to appeal, which amounted to a due process violation. Def.'s Mem. 4-5. The government states that the hearing officer "advised the defendant that she had the right to appeal his decision to a higher court" and argues that "[t]he record is clear that the defendant was well apprised of all the process rights she was due in proceedings." Gov't Opp'n 3, 9.

In reviewing the transcript of her proceedings before the hearing officer, it is clear that the hearing officer noted that Ms. Bolieiro had the right to appeal. Proceedings Tr. (July 8, 1992) 4. This statement came at the start of the second hearing immeadiately after Ms. Bolieiro was sworn and was part of the boilerplate language regarding all of the rights Ms. Bolieiro had in the hearing. Id. at 3-4. Before any evidence was taken, the hearing officer stated in a summary fashion that Ms. Bolieiro had the right to appeal while also mentioning six other

rights she had.[11]  Id.  As such, Ms. Bolieiro was technically

informed of her right to appeal, id., and her argument that she

lacked notice of her appellate rights, by itself, is

unpersuasive.

The government's argument that the process due was

provided, however, is deficient.  Ms. Bolieiro's underlying

argument is not about notice that she could file an appeal but

about notice that she needed to appeal.  See Def.'s Mem. 4.  The

hearing officer's statement at the start of a hearing that she

had the right to appeal does not satisfy due process if notice

is not provided to the defendant that it is time to appeal,

especially where a notice of appeal must be filed within thirty

days.  See 8 C.F.R. § 1003.38(b).

The hearing officer found that Ms. Bolieiro was eligible to

apply for an INA section 212(c) waiver.  Proceedings Tr. (July

8, 1992) 4.  The hearing officer informed Ms. Bolieiro that she

must file an application for such a waiver by August 10, 1992,

and set December 22, 1992, as the hearing date for adjudicating

the case.  Id. at 11-12.  He also informed Ms. Bolieiro that if

she failed to file the application by that date, he would

consider the application abandoned and would order her deported.

Id. at 12.  Because Ms. Bolieiro did not file the documents by

---

[11] The right to appeal was lumped in between five hearing
rights and the right to designate the country of deportation.
Id.

18

the proscribed date, she was ordered deported in a written opinion on September 30, 1992. 1992 Decision Immigration Judge 2. She claims not to have received actual notice of this order. Def.'s Mem. 4.

The government attempts to place this failure of notice on Ms. Bolieiro's "own shoulders" by pointing out that "she in essence walked away from proceedings." Gov't Opp'n 10. Recognizing its weakness, the government further questions why Ms. Bolieiro has never explained her failure to file the section 212(c) waiver application or BIA appeal in 1992. Id.

This Court is persuaded that Ms. Bolieiro was truly unaware of the final deportation order until 1999. She was a CI for immigration officials and under an order of supervision by them for years. See Def.'s Mem. 2. She further claims that she was never told of the order of deportation while she was a CI. Id. Only upon her termination as a CI did immigration officials detain her for deportation, and it was only at this time that she became aware of the deportation order. Id. She then promptly retained an attorney to file a motion to reopen. Id. This Court is persuaded that Ms. Bolieiro was led to believe that her status was not in jeopardy. 1999 Mot. Reopen ¶ 3. As such, the mere passage of time between deportation being ordered in 1992 and Ms. Bolieiro learning of the final order in 1999 cannot constitute a valid waiver. Cf. United States v. Cerna,

603 F.3d 32, 39 (2d Cir. 2010) ("The mere fact that a year passed between the issuance of the deportation order and Cerna's deportation cannot, in and of itself, be the factual basis for the . . . finding of valid waiver.").

As soon as Ms. Bolieiro knew of the final order, she moved to reopen proceedings. Def.'s Mem. 2-3, 4. True, an explanation should have been provided in the 1999 motion to reopen.[12] But this motion to reopen was filed by an attorney who, Ms. Bolieiro claims, provided ineffective assistance, which constituted yet another due process violation. Id. at 4. She further claims that the ineffective assistance prevented the reopening, denied her consideration of the merits of her claim, and led to her removal. See id.

"[I]neffective assistance of counsel can be grounds for excusing the administrative exhaustion requirement of 8 U.S.C. § 1326(d)(1)." Cerna, 603 F.3d at 42. While there is no Sixth Amendment right to counsel in civil deportation proceedings, Lozada v. INS, 857 F.2d 10, 13 (1st Cir. 1995), the Fifth

---

[12] It appears that her attorney may have attempted to state the reasons. See 1999 Mot. Reopen ¶ 4 (noting that "she did not pursue [relief] because of ineffective assistance of counsel, because of a good faith mistake in not providing the Immigration Court with her forwarding address in 1992, and because she relied to her detriment on representations by I.N.S. officials that her status as an alien was secure"). This attempt, however, was part of a two-page motion to reopen that lacked evidence and required documents. See id. ¶¶ 1-6; 1999 Decision Immigration Judge 3.

20

Amendment's due process clause still protects an alien's right to a fair hearing, see Iannetta v. INS, No. 94-1962, 1995 WL 86263, at *2 (1st Cir. Mar. 1, 1995) (per curiam). Ineffective assistance of counsel violates due process where "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." Id. In cases where an alien claims that ineffective assistance of counsel prevented him from satisfying section 1326(d)(1), the Second Circuit has held that an alien must "show 'that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" Cerna, 603 F.3d at 42-43 (quoting Perez, 330 F.3d at 101[13]). "In order to establish fundamental unfairness, in turn, he must establish '1) that competent counsel would have acted otherwise, and 2) that he was prejudiced by his counsel's performance.'" Id. at 43 (quoting Perez, 330 F.3d at 101).

Under both standards, Ms. Bolieiro has satisfied this burden. Ms. Bolieiro's counsel failed to comply with many of the regulatory requirements for filing a motion to reopen. See 1999 Decision Immigration Judge 2-3. He did not provide the required documentation that the filing fee was paid. Id. He did not submit a completed INA section 212(c) application as

---

[13] Perez here sets the same standard for showing that ineffective assistance of counsel deprived an alien of the opportunity for judicial review under section 1326(d)(2). Id.

21

required. Id. at 3. He claimed ineffective assistance of counsel in the filing, but failed to satisfy any of the three Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1998), requirements for such claims. 1999 Decision Immigration Judge 3. This ineffective assistance claim is particularly troubling to this Court because it shows a complete lack of knowledge by counsel of his client's case. After all, Ms. Bolieiro was not previously represented by counsel. The filing also failed to offer any evidence as to why Ms. Bolieiro failed to file her application for relief in the first place, the key question that had to be answered. Id.

As a result, the hearing officer did not reach the merits of her claim - whether she ought receive an INA section 212(c) waiver - because there was no way to adjudicate such a claim without an application showing prima facie eligibility. See id. This filing prevented Ms. Bolieiro from reasonably presenting her case. Competent counsel would have followed clearly established regulations for filings to reopen, would have included the required, completed INA section 212(c) application, and would have provided some evidence[14] as to the essential question. Whether Ms. Bolieiro was prejudiced by her counsel's performance depends on whether there was "a reasonable likelihood that the result would have been different." Luna,

---

[14] At least an affidavit from Ms. Bolieiro.

436 F.3d at 321 (quoting Loaisiga, 104 F.3d at 487) (internal
quotation mark omitted). This standard is the same as the one
to determine whether proceedings were fundamentally unfair under
section 1326(d)(3) and will be explored in that section. See
infra section II.C. For now, this Court will presume it is
satisfied.

Ms. Bolieiro filed a second motion to reopen in 2011.
Def.'s Status Report ¶ 8. The same hearing officer denied the
2011 motion to reopen on January 31, 2012. 2012 IJ Opinion. A
motion to reconsider was filed, which he also denied on March 7,
2012. BIA Decision 1. In rejecting the 2011 motion to reopen,
the hearing officer found that he did not have jurisdiction to
consider the motion. 2012 IJ Opinion 3. Ms. Bolieiro appealed
to the BIA from the denials of the motion to reopen and the
motion for reconsideration. Second Status Report ¶ 6. On May
29, 2012, the BIA dismissed this appeal. BIA Decision.

This appeal to the BIA of the denial of the 2011 motion to
reopen may itself be enough to satisfy the administrative
exhaustion requirement. See Perez, 330 F.3d at 100-01. This
denial was not on the merits but on jurisdictional grounds.
2012 IJ Opinion 3. The hearing officer blamed Ms. Bolieiro for
waiting too long. Id. Ms. Bolieiro, however, had attempted to
reopen her case twelve years earlier but failed due to
ineffective assistance of counsel, a due process violation. The

23

cause of that seven-year delay and, in turn, the subsequent denial was a lack of notice that she needed to appeal a deportation order. At that time, Ms. Bolieiro was working with immigration officials as a CI, was unaware of the deportation order, and was not informed of it until she was terminated as a CI.

Here, where Ms. Bolieiro's attempts to have the merits of her claim adjudicated have been frustrated by due process violations, this Court rules that she has satisfied the section 1326(d)(1) exhaustion of administrative remedies requirement.

## B. Deprivation of Opportunity for Judicial Review

The second prong of section 1326(d) requires the alien to show that the deportation proceedings improperly deprived her of the opportunity for judicial review. 8 U.S.C. § 1326(d)(2). It appears that the government and Ms. Bolieiro agree that "whether the defendant was deprived [of] judicial review hinges on the [exhaustion of administrative remedies] analysis." Gov't Opp'n 10. This Court agrees. Having ruled that the defendant was prevented from exhausting administrative remedies by due process violations, these same violations have deprived her of the opportunity for judicial review.

In this case, neither the hearing officer nor the BIA adjudicated the merits because of the failure of notice and the ineffective assistance of counsel in the filing of the 1999

motion to reopen. In such a case, the alien is deprived of judicial review. Cf. Perez, 330 F.3d at 101-03 (stating that an alien "was deprived of judicial review because . . . neither the [hearing officer] nor the BIA ever considered the merits of" his case, id. at 101); cf. also Luna, 436 F.3d at 318-19 (noting that some due process violations deprive an alien of their opportunity for judicial review); Sosa, 387 F.3d at 136 (noting that invalid waivers of section 1326(d)(1) & (2) "often result from the same lack of understanding").

This Court must note that while Ms. Bolieiro is currently pursuing an appeal to the First Circuit, United States v. Boliero, (BIA 2012), appeal docketed, No. 12-1807, that appeal does not concern the merits of her case but rather the denials by the hearing officer and the BIA on jurisdictional grounds.[15]

## C.    Fundamental Unfairness: Procedural Error Plus Prejudice

The third prong of section 1326(d) requires proving that the deportation proceedings were fundamentally unfair – a showing both of fundamental procedural error and prejudice. See 8 U.S.C. § 1326(d)(3); Luna, 436 F.3d at 319.[16]    An alien "must

---

[15] Waiting for a ruling from the First Circuit and only then essaying a potential adjudication on the merits, while allowing Ms. Bolieiro to be criminally prosecuted, would be an injustice.

[16] This Court has no doubt that a deportation order based on a criminal conviction obtained in a constitutionally objectionable process is fundamentally unfair. In this case, a

25

show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." Loaisiga, 114 F.3d at 487.

The circuit courts disagree on whether a procedural error must result in a deprivation of a liberty or property interest or whether the loss of a discretionary remedy due to a procedural error suffices, if prejudicial, to demonstrate fundamental unfairness under 8 U.S.C. section 1326(d)(3). Compare United States v. Torres, 383 F.3d 92, 104 (3d Cir. 2004), and United States v. Wilson, 316 F.3d 506, 510 (4th Cir. 2003), and United States v. Lopez-Ortiz, 313 F.3d 225, 230-31 (5th Cir. 2002), with United States v. Copeland, 376 F.3d 61, 71-73 (2d Cir. 2004), and United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1049 (9th Cir. 2004). The First Circuit has avoided ruling on this matter at least twice. See Luna, 436 F.3d at 321 (declining to resolve the question and noting the same decision in United States v. Loaisiga, 104 F.3d 484).

Presented once again with no binding standard, this Court is free to choose the most persuasive one. The Second Circuit's

procedural error in a criminal proceeding led to Ms. Bolieiro's deportation order, removal, and current indictment. This section, however, focuses on whether the entry of the deportation order is itself fundamentally unfair. The Court will save its analysis of the due process considerations arising from basing a criminal prosecution on a deportation order which itself was based on a conviction vacated due to constitutional shortcomings for section II.D infra.

reasoning that, while there may not be a right to section 212(c)
relief, there is a right to seek such relief is most convincing.
See Copeland, 376 F.3d at 72. The ineffective assistance of
counsel in the 1999 motion to reopen prevented Ms. Bolieiro from
seeking that relief. As such, the ineffective assistance of
counsel was the type of error that, if prejudicial, would result
in a fundamentally unfair deportation order.

"The standard for prejudice in this context is 'a
reasonable likelihood that the result would have been different
if the error in the deportation proceeding had not occurred.'"
Luna, 436 F.3d at 321 (quoting Loaisiga, 104 F.3d at 487). Ms.
Bolieiro must show that there was a reasonable likelihood that
the hearing officer would have granted her section 212(c)
application had he reached the merits. See id. As such, this
Court must evaluate the section 212(c) application in the same
way the hearing officer would; it must conduct a "trial within a
trial." Id. at 322 (quoting Copeland, 376 F.3d at 73).

In evaluating INA section 212(c) applications, hearing
officers use standard criteria including:

> "the seriousness of the offense, evidence of either
> rehabilitation or recidivism, the duration of the
> alien's residence, the impact of deportation on the
> family, the number of citizens in the family, and the
> character of any service in the Armed Forces." Other
> factors include arrival in the United States as a
> child, history of employment, property or business
> ties, community service, and evidence of good
> character.

27

Id. at 321 (citation omitted) (quoting INS v. St. Cyr, 533 U.S. 289, 296 n.5 (2001)). In the end, the positive and negative factors are balanced against each other. Id. at 321-22. A criminal history does not automatically bar relief. Id. at 322 (quoting this Court's opinion in United States v. Lepore, 304 F. Supp. 2d 183 (D. Mass. 2004), that "[i]t is important to remember that, by definition, 'aggravated felons' are eligible for relief, so the fact that [the alien] is a convicted criminal cannot be dispositive," id. at 199). Moreover, criminal behavior after the challenged deportation hearing should not be included in the calculation because this mini-trial is designed to ascertain how a hearing officer would have ruled at the time of the deportation hearing. Id. Finally, the grant of section 212(c) relief was fairly common for aliens with criminal convictions. See Mattis v. Reno, 212 F.3d 31, 33 (1st Cir. 2000) (observing that "over half the applications were granted").

An evaluation of Ms. Bolieiro's potential section 212(c) application in 1999 reveals factors that weigh heavily in her favor. Ms. Bolieiro arrived in the United States in 1972 as a six-year-old child. She had been in the United States as a legal permanent resident for eighteen years before she was charged with a crime, for twenty years before she was brought

into deportation proceedings, and for twenty-seven years by
1999.

A criminal conviction for a drug distribution crime is
serious, but that is Ms. Bolieiro's only criminal conviction.
Moreover, her crime was selling $100 of cocaine, a low-level
transaction. As a result of the conviction, she spent eight
months in jail and appears to have been released early for good
behavior. See Proceedings Tr. (July 8, 1992) 8. She was not
convicted of any other crime between 1992 and 1999 and worked as
a CI for immigration officials from 1995 until 1999, both
evincing rehabilitation.

In 1999, she was the sole caretaker of an eleven-year-old
U.S. citizen child. She was also the mother of an eighteen-
year-old U.S. citizen. According to her filing, she also had
steady employment for a number of years. This Court
particularly recognizes the close ties she has with her family,
as it was her sister who hired the lawyer who attempted to
reopen her case in 1999 and her family that attended the oral
argument on this case.

The hearing officer declined to exercise his sua sponte
authority to reopen the proceedings in 2012, stating that the
"negative factors outweigh any equities present in her case,"
but this was in light of the much higher burden to show
exceptional circumstances. 2012 IJ Opinion 3. Moreover, he

29

took her reentry into the country as the predominant factor of
his analysis. See id. This event occurred after the 1999
motion to reopen and, thus, is not relevant to this Court's
analysis.

Based on the many positive factors significantly
outweighing the negative of Ms. Bolieiro's criminal conviction,
this Court rules that were Ms. Bolieiro to have a review of the
merits of her INA section 212(c) waiver application, there is a
reasonable likelihood that relief would have been granted.[17]
Certainly, she is in the top half of all applicants. As such,
the ineffective assistance of counsel she received was not only
a fundamental error, but one that prejudiced her case.
Therefore, Ms. Bolieiro has satisfied section 1326(d)(3) by
showing that the entry of the deportation order was
fundamentally unfair.

## D. Due Process Considerations

The stringent due process protections afforded to criminal
defendants help us build the sound structure necessary to ensure

---

[17] For purposes of determining whether Ms. Bolieiro has
either satisfied the exhaustion of administrative remedies
requirement or should be excused from this requirement, supra
section II.A, this Court presumed without deciding that were it
not for the ineffective assistance of counsel there was "a
reasonable likelihood that the result would have been
different." Luna, 436 F.3d at 321 (quoting Loaisiga, 104 F.3d
at 487) (internal quotation mark omitted). Having now
determined that the ineffective assistance of counsel prejudiced
her case, the Court can rest assured that the earlier
presumption is valid.

that all criminal convictions are irreproachable. When
reviewing administrative proceedings with potentially
significant flaws, "which [have led] to a serious criminal
prosecution and [could lead to] a long prison term, due process
should be interpreted generously to protect the accused."
United States v. Perez, 213 F. Supp. 2d 229, 235 (E.D.N.Y. 2002)
(Weinstein, J.). Given that the 1992 deportation order, Ms.
Bolieiro's actual removal, and this prosecution all stem from a
constitutionally flawed and now-vacated conviction, common sense
dictates the dismissal of this indictment.

The First Circuit has rejected the argument that a
deportation order premised on a vacated criminal conviction must
be vacated as a matter of due process. See Pena-Muriel, 489
F.3d at 443. That appeal of a refusal by the BIA to reopen
removal proceedings, id. at 440, is easily distinguishable.

First, the First Circuit has not held that a vacatur of an
underlying criminal conviction should have no effect on a
deportation order. See id. at 443. It recognized that
"[n]umerous courts have observed that the overturning of a
conviction upon which deportability was premised is an
appropriate basis for reopening administrative proceedings." De
Faria v. INS, 13 F.3d 422, 423 (1st Cir. 1993) (per curiam).
The Pena-Muriel Court merely recognized "the fact that a vacatur
may be an 'appropriate' basis for reopening a deportation order

does not establish a due process right to such reopening after one has departed the country." 489 F.3d at 443.

Second, the First Circuit in Pena-Muriel explicitly recognized the "strong public interest in bringing finality to the deportation process" in finding no due process violation. Id. The due process protections for criminal defendants must be more stringent than protections in administrative proceedings. Moreover, the public interest in finality of administrative proceedings is not found in this case - an ongoing criminal prosecution.

Before she was convicted in 1992, Ms. Boliero had been a lawful permanent resident for twenty years. The deportation order, her removal, and this current charge of illegal reentry all flowed as results of that 1992 conviction, building upon each other. After all, were it not for that conviction, none of the subsequent events such as the imposition of the deportation order, the removal, and the present indictment would have occurred. Yet that conviction was vacated as having violated the Fifth and Fourteenth Amendments of the U.S. Constitution. See Padilla, 130 S. Ct. at 1486. The conviction was wiped out ab initio.

This Court can find no way around the conclusion that any prosecution of Ms. Bolieiro today for illegal reentry would continue to impose the consequences of that unconstitutional

conviction.[18]  "The least we can do is to wipe out the record of
conviction and its consequences."  United States v. Morgan, 222
F.2d 673, 675 (2d Cir. 1955) (emphasis added).  The sound
structure needed for an irreproachable conviction cannot be
built upon so infirm a foundation.[19]

---

[18] Professor Rachel E. Rosenbloom presents a thoughtful
analysis of the difficulties that Ms. Bolieiro and those like
her face.  See generally Rachel E. Rosenbloom, Will Padilla
Reach Across the Border?, 45 New Eng. L. Rev. 327 (2011).  In
her article, Professor Rosenbloom imagines a hypothetical alien
named Jane Smith who is charged with possession of marijuana
with intent to distribute.  Id. at 336.  Believing there would
be no immigration consequences due to inaccurate advice by
counsel, Jane Smith pleads guilty.  Id. at 336-37.  After she is
deported, Jane Smith faces major obstacles in vacating her
conviction on Padilla grounds without reentering the United
States and is likely unable to legally reenter.  See id. at
338-44.  Even if she is able to have her conviction vacated, as
Ms. Bolieiro was able to do, Jane Smith still faces the
consequences of the deportation order, and having that order
reexamined is nearly impossible.  See id. 345-48 ("[T]here is a
good chance that Jane Smith will be unable to vacate her removal
order even though the conviction on which it is predicated no
longer exists."  Id. at 348.)  "In sum, it is quite possible
that Jane Smith, even if she immigrated to the United States in
early childhood and was removed solely on the basis of the
now-vacated conviction, will have no way of returning lawfully
to the United States."  Id. at 348.  Professor Rosenbloom
concludes that this reveals that "the key animating principle of
Padilla – to prevent noncitizen defendants from being 'at the
mercy of incompetent counsel' – will not have been fulfilled."
Id. (footnote omitted) (citing Padilla, 130 S. Ct. at 1486).

[19] Due process may not require the reopening of the
deportation order - this Court passes no judgment on that
question – but a criminal conviction for illegal reentry would
be a continuing consequence of a conviction vacated ab initio
and a violation of due process.

33

## III. CONCLUSION

This Court would not presume to advise the government on which prosecutions to pursue and which to avoid. The Court recognizes that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Heckler v. Chaney, 470 U.S. 821, 831 (1985). It has not, however, escaped this Court's notice that prosecutions for illegal reentry have been initiated against about twenty-three percent of the criminal defendants whose prosecutions have commenced in federal district courts over the past three years. See Table D-2: U.S. District Courts – Criminal Defendants Commenced, by Offense, During the 12-Month Periods Ending June 30, 2008 Through 2012. While the proportion of such prosecutions is lower in the District of Massachusetts, at just under ten percent, illegal reentry prosecutions are still a significant chunk of all criminal enforcement actions. See Table D-3: U.S. District Courts – Criminal Defendants Commenced, by Offense and District, During the 12-Month Period Ending June 30, 2012. This Court expresses no view as to this allocation of enforcement and prosecutorial resources.

Moreover, this Court is aware that in the immigration enforcement context, the Executive, through the Director of U.S. Immigration and Customs Enforcement ("ICE"), has outlined for

34

ICE personnel the factors they should use when deciding whether to exercise prosecutorial discretion. Memorandum from John Morton, Dir., U.S. Immigration & Customs Enforcement (June 17, 2011), available at http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf. The many factors delineated by Director John Morton are not exhaustive, and "no one factor is determinative"; cases should be evaluated individually and "decisions should be based on the totality of the circumstances." Id. at 4.

Many of those factors from civil immigration enforcement are appropriate points of reference when deciding whether to pursue a criminal prosecution for illegal reentry. In this Court's view, the Executive should explicitly import the factors established for determining whether to pursue a civil immigration enforcement action into the criminal enforcement context. Given that such prosecutions are so common, it stands to reason that on the margins exist prosecutions for illegal reentry of individuals who may be outliers, uniquely different from the typical defendant accused of illegal reentry.

Ms. Bolieiro's case is one such example. While she did reenter the United States illegally after her deportation for a drug conviction, she has since had that conviction vacated. This Court is aware of no other criminal record for Ms. Bolieiro. She entered the United States just before her seventh

birthday as a lawful permanent resident, lived in the United States for twenty years under this status,[20] cooperated with authorities as a CI, is a mother of two U.S. citizen children, and is likely a victim of domestic violence,[21] a "factor[] which should prompt particular care and consideration" according to ICE guidance. See id. at 4-5.

The basic fairness considerations in this case favor a decision declining to prosecute Ms. Bolieiro. Ms. Bolieiro was a lawful permanent resident. Yes, Ms. Bolieiro was convicted of a drug offense, was ordered deported, and was actually removed. Moreover, her reentry into the United States under this set of circumstances was a crime. But it is also a fact that the conviction precipitating this set of events was constitutionally invalid. She was deprived of legal status by a deportation order based on what has now been judged to be a constitutionally infirm conviction. The current prosecution is thus attempting to enforce a deportation order that stems from a now-vacated, constitutionally unjust conviction. The wisdom of pursuing a case under such circumstances is dubious at best.

---

[20] She remained in the United States for seven more years before her removal. See Def.'s Mem. 2. It appears that immigration authorities permitted her continuing presence under an order of supervision while she was cooperating with them.

[21] She has been found to be prima facie eligible for relief under VAWA. Def.'s Mem. 3 n.1.

36

While this Court understands that Ms. Bolieiro was originally arrested and indicted before her aggravated felony conviction was vacated, it is inexplicable why the government has continued to pursue this criminal case.

This Court holds that Ms. Bolieiro has met all three requirements under 8 U.S.C. section 1326(d) and has shown that the 1992 deportation order, an essential element of the crime with which she is charged, is invalid. Moreover, a prosecution for illegal reentry is a due process violation where this prosecution is a continuing consequence of a criminal conviction that was vacated ab initio. For each of these reasons, the motion to dismiss, ECF No. 21, is GRANTED.

**SO ORDERED.**

William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE